IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AUDIE M. GRUNWALD,

      Plaintiff,

      v.

MICHAEL J. ATRUE,
Commissioner of Social Security,

      Defendant.

No. CV 06-1073-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Audie Grunwald brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision is affirmed.

## BACKGROUND

      Mr. Grunwald was born November 7, 1961. He completed high school and worked as a gas station attendant and at other jobs that are not relevant to this case. On his applications, Mr. Grunwald indicated that he last worked for two years ending on October 24, 2001, as a gas

PAGE 1 - OPINION AND ORDER

station attendant. His job ended because he was laid off. Mr. Grunwald alleged disability beginning on that date due to pain in the back and knees that made it difficult for him to stand or walk for more than 20 to 30 minutes. Tr.[1] 68-69.

At his hearing, Mr. Grunwald amended the alleged onset of disability to June 1, 2003, because he had worked as a gas station attendant for an additional two years. He stopped working in February 2003, when he was hospitalized with alcohol withdrawal seizures. Tr. 201-02, 258. Mr. Grunwald did not work after his discharge from the hospital, but looked for work until June 1, 2003, when he felt his back pain had become so severe that he could not return to work. Tr. 258-59

Mr. Grunwald satisfied the insured status requirements for a claim under Title II of the Social Security Act through December 31, 2004. He must establish that he became disabled on or before that date to prevail on his claim for disability insurance benefits. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Mr. Grunwald

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

challenges the ALJ's evaluation of the evidence and conclusion at step four of the decision-making process.

Prior to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments.  20 C.F.R. §§ 404.1520(e); 404.1545(a);416.920(e); 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (1996).

Here the ALJ assessed Mr. Grunwald's RFC as follows:

> The claimant has the residual functional capacity to lift 50 pounds occasionally, and 25 pounds frequently; stand, walk, or sit for six hours in an eight-hour day; he should perform only simple routine tasks, with no work at heights, and no exposure to high concentrations of fumes, dusts or smoke.

Tr. 17.

At step four, the claimant is not disabled if the ALJ determines she retains the RFC to perform her past relevant work experience.  20 C.F.R. §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

Here, the ALJ determined that Mr. Grunwald's past work as a gas station attendant did not require him to perform work-related activities precluded by his RFC.  The ALJ concluded that Mr. Grunwald remained capable of performing his past relevant work.  Accordingly, she found that Mr. Grunwald was not disabled within the meaning of the Act.

At step five, the ALJ must determine whether the claimant can perform work that exists in the national economy.  *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).  Here, the burden shifts to the ALJ to show that a significant number of jobs exist in the national economy that the claimant can perform.  *Yuckert*, 482 U.S. at 146 n.5; *Tackett*, 180 F.3d at 1098.  If the ALJ meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1); 420.920(a)(4)(v), (g)(1).

Here, the ALJ received testimony from a vocational expert ("VE") who identified other work that could be performed by a person with Mr. Grunwald's RFC. The ALJ found it unnecessary to reach the fifth step, because Mr. Grunwald failed to show that he could not return to his previous work. She ended her determination at step four without relying on the VE's testimony.

## DISCUSSION

### A.  Assignments of Error

Mr. Grunwald contends the ALJ improperly evaluated the evidence of his functional limitations and arrived at an erroneous RFC assessment. He further challenges the vocational testimony and contends the ALJ improperly rejected the VE's opinion. Finally, he reasserts the foregoing errors as violations of the ALJ's duty to develop the record.

### B.  Standard of Review

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson*, 359 F.3d at 1193. The Commissioner's decision must be upheld, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

### C.  RFC Assessment

Mr. Grunwald argues the ALJ erred in evaluating the opinion of Kurt Brewster, M.D.,

and erroneously failed to identify functional limitations attributable to borderline intelligence.

### 1. Dr. Brewster's Opinion

On March 13, 2006, Dr. Brewster performed a comprehensive medical examination. At that time, Mr. Grunwald's primary complaint was asthma and he reported that his primary functional limitation was that he became short of breath after walking about six blocks. Mr. Grunwald admitted that he had never been evaluated or prescribed medication for asthma. Tr. 228-34.

Dr. Brewster's physical examination was "fairly unremarkable with minimal elevation of post-exercise vitals." Tr. 233. He reviewed Mr. Grunwald's medical records and found no evidence of an ongoing recurrence of asthma symptoms. He noted that Mr. Grunwald was not receiving full appropriate medical treatment for asthma and was exacerbating his problem by smoking. However, even with those contributing factors, Dr. Brewster noted that "overall, this examiner does not find evidence . . . to support severe limitations as a result of this medical problem." Tr. 233.

Dr. Brewster found that Mr. Grunwald had no exertional, postural, or manipulative limitations, but opined that "limited exposure to dust, fumes and smoke (including tobacco) is reasonable." Tr. 227.

Mr. Grunwald argues the ALJ failed to address the functional capacities assessment of Dr. Brewster with respect to exposure to fumes. This argument cannot be sustained because the ALJ discussed Dr. Brewster's opinion in detail and achieved an RFC assessment that is consistent with his opinion. Tr. 17-18, 20-21.

Dr. Brewster suggested that limited exposure to fumes and other pollutants, including tobacco smoke, would be a reasonable vocational limitation, despite evidence that Mr. Grunwald functioned adequately while abusing tobacco and not receiving proper medical treatment. The ALJ could reasonably infer from this that Mr. Grunwald would be able to work in an environment free from high concentrations of fumes, dusts, and smoke. Because the ALJ's RFC

PAGE 5 - OPINION AND ORDER

assessment reflects reasonable conclusions that can be drawn from Dr. Brewster's opinion, Mr. Grunwald's argument that she improperly rejected the opinion has no basis in fact.

### 2. Borderline IQ

Mr. Grunwald did not allege vocational limitations from deficits in mental function or present evidence of mental health treatment. There is no indication of deficits in mental function in the reports or treatment records of the acceptable medical sources in the current record. The ALJ indicated that Mr. Grunwald had been diagnosed with borderline intellectual functioning in March 1998. Tr. 19, 259.

The ALJ learned of the borderline intellect diagnosis from the records of proceedings on Mr. Grunwald's previous unsuccessful application for Social Security disability benefits. These earlier proceedings are not part of the administrative record in the present case. Nonetheless, the ALJ apparently took administrative notice of the diagnosis and chose to give Mr. Grunwald the benefit of the functional limitations previously found because she believed such an impairment is "not something that's going to get better." Tr. 259.

Mr. Grunwald does not object to the ALJ's inclusion of borderline intellect among his impairments, but argues that she failed to consider it properly in reaching her RFC assessment. He argues that the ALJ found no limitations related to this impairment. This is not supported by the record. The ALJ significantly limited Mr. Grunwald's occupational base by excluding all jobs except those requiring "only simple routine tasks." Tr. 17, 20.

Mr. Grunwald contends that the ALJ abused her discretion by reaching this limitation without the assistance of a medical expert. This is contrary to the record, which shows that the ALJ relied on a Psychiatric Review Technique Form completed by agency psychological experts Paul Rethinger, Ph.D., and Robert Henry, Ph.D. Tr. 146-59.

The Commissioner relies on such psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180 (1996). Drs.

PAGE 6 - OPINION AND ORDER

Rethinger and Henry found that Mr. Grunwald's medical records did not support any functional limitations from mental impairments. Tr. 156.

Furthermore, the ALJ provided a reasonable explanation for the conclusion she reached. Specifically, she pointed out that Mr. Grunwald's diagnosis of borderline intellectual functioning preceded his alleged onset of disability and his employment as a gas station attendant. Mr. Grunwald did not present evidence of deterioration in his mental function. Indeed, he did not even allege work-related restrictions based on deficits in mental function or present evidence that he required treatment for such deficits.

Based on the foregoing, the ALJ's RFC assessment reflects reasonable conclusions that can be drawn from the record as a whole regarding Mr. Grunwald's limitations from asthma and borderline intellectual functioning. Accordingly, the RFC assessment must not be disturbed. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

### D.     Vocational Evidence

Mr. Grunwald challenges the vocational evidence on two grounds. First, he contends the VE's testimony has no evidentiary value because it was based on hypothetical limitations that did not accurately reflect his functional limitations. Second, he contends the ALJ abused her discretion by rejecting the VE's opinion.

#### 1.     Hypothetical Question

Mr. Grunwald contends the ALJ elicited testimony from the VE with a hypothetical question that did not accurately reflect the environmental restrictions required by his asthma. He correctly states that vocational testimony based on unsupported hypothetical assumptions "has no evidentiary value." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

The ALJ posed a hypothetical question that precluded work requiring exposure to high concentration levels of fumes, dust or pollutants. Tr. 275. Mr. Grunwald argues that the hypothetical question should have restricted exposure to "any noxious fumes or smoke" based on

PAGE 7 - OPINION AND ORDER

the opinion of Dr. Brewster. Plaintiff's Brief at 11.

As noted previously, the ALJ's RFC assessment reasonably reflects Dr. Brewster's opinion. The hypothetical limitations upon which the VE's testimony was based accurately described the ALJ's RFC assessment. Tr. 17, 274-75. Accordingly, the ALJ did not err in the way she elicited the vocational testimony.

Furthermore, the ALJ did not rely on the VE's testimony in concluding that Mr. Grunwald could return to his past work as a gas station attendant. Instead, she relied on his work history, which demonstrated the ability to work as a gas station attendant, the absence of evidence that he stopped working as a result of any medical condition, and the absence of evidence in his treatment history suggesting a functional decline after the time he stopped working. Tr. 22.

Accordingly, even if the court assumed that the vocational testimony had no evidentiary value, the ALJ's conclusion is supported by other substantial evidence and is consistent with the record as a whole.

### 2.    Vocational Expert's Opinion

Mr. Grunwald contends the ALJ abused her discretion by rejecting the VE's opinion that a person restricted to simple routine tasks could not work as a gas station attendant. The VE indicated that Mr. Grunwald's past work fell within the semiskilled category, as defined in the Dictionary of Occupational Titles, and therefore required activities exceeding simple routine tasks. Tr. 275.

The testimony of a VE is only necessary "when the claimant has shown that he or she cannot perform any previous relevant work." *Miller v. Heckler*, 770 F.2d 845, 850 (9th Cir. 1985). The claimant is the primary source for his vocational history and the functional demands of his past work. The ALJ must appraise both the claimant's statements about which past work requirements can no longer be met and the medical evidence establishing how the claimant's impairment limits his ability to meet the work requirements. SSR 82-62, 1982 WL 31386

(1982).

Mr. Grunwald did not produce statements suggesting that he could no longer perform the intellectual demands of his past work. He failed to produce vocational evidence showing that he could no longer perform the intellectual demands of his work as a gas station attendant. He failed to produce medical evidence of mental limitations that would preclude such work. Accordingly, Mr. Grunwald failed to show that he could not perform his past work and the ALJ was not required to rely on the testimony of a VE.

Furthermore, the ALJ did not rely on the VE's testimony. There is no reference to that testimony in the ALJ's decision. Instead, the ALJ relied on Mr. Grunwald's demonstrated ability to work as gas station attendant, and his medical history, which did not include evidence of a decline in intellectual function. Mr. Grunwald did not stop working because the job exceeded simple routine tasks, but because he was laid off. He did not allege that the work exceeded his intellectual ability. There is no indication in the record that Mr. Grunwald's level of intellectual functioning had any impact on his past work.

The ALJ's conclusion that Mr. Grunwald could return to his past work as a gas station attendant was based on substantial evidence other than the VE's testimony. In relying on the other evidence, the ALJ did not abuse her discretion. SSR 82-62; *Miller*, 770 F.2d at 850.

### E.     Development of the Record

Mr. Grunwald maintains that the ALJ failed to develop the record by failing to pose proper hypothetical questions to the VE, by failing to consider the assessment of Dr. Brewster and by rejecting the testimony of the VE regarding his inability to perform his past work.

An ALJ's duty to develop the record further is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

PAGE 9 - OPINION AND ORDER

The record before the ALJ was neither ambiguous nor inadequate regarding the factual issues Mr. Grunwald raises here.  Accordingly, the ALJ had no duty to develop the record more fully.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision that Mr. Grunwald does not suffer from a disability and is not entitled to DIB or SSI is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

IT IS SO ORDERED.

DATED this   29th   day of May, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court